# THE UNITED STATES OF AMERICA

v.

# MILLS.

CERTIORARI; CRIMINAL LAW; UNITED STATES COMMISSIONERS; POOR CONVICTS; POLICE COURT; APPELLATE PRACTICE.

1. The writ of *certiorari* can not be used to test the right of a party to hold the office of United States Commissioner, or the authority of the Supreme Court of the District to appoint such an officer.

2. Whether the Supreme Court of this District has the authority to appoint a United States Commissioner, *quære.*

3. Sections 1042 and 5296, R. S. U. S., relating to the discharge of poor convicts who are unable to pay fines imposed upon them after 30 days imprisonment for the nonpayment of such fines, are locally applicable to this District and are in force here.

4. The Police Court of this District, although a court of the United States in one sense, is not a court of the United States within the meaning of the Federal Constitution.

5. The powers vested by Sec. 1042, R. S. U. S., relating to the discharge of poor convicts, in United States Commissioners can be exercised in this District only with reference to those cases in which persons are imprisoned for nonpayment of a fine under sentence of the Supreme Court of this District, sitting as a circuit or district court of the United States, and administering the general penal code of the United States; and there

is no warrant of law for the exercise of such powers with reference to the local penal law of the District of Columbia and the sentences of the Police Court.

6. The writ of *certiorari* is the proper means of preventing the exercise by a United States Commissioner of such powers with reference to a person imprisoned under a sentence of the Police Court of this District; but where during the pendency of an appeal by the United States from an order quashing a writ of *certiorari*, the sentence of the prisoner expired, this court *dismissed* the appeal.

No. 745.   Submitted November 16, 1897.   Decided December 7, 1897.

HEARING on an appeal by the United States from an order quashing a writ of *certiorari*.   *Appeal dismissed.*

The COURT in its opinion stated the case as follows:

This is an appeal by the United States from an order of the Supreme Court of the District of Columbia quashing a writ of *certiorari.*

The petition for the writ, which was filed on October 5, 1897, recites that one Beckett, on September 3, 1897, in the Police Court of the District of Columbia, was convicted of the crime of larceny, and was sentenced by that court to pay a fine of $15 and in default of the payment of such fine to be imprisoned in jail for sixty days; that Beckett did not pay the fine and was committed to jail, and has not been in jail for sixty days; that the defendant, Samuel C. Mills, attempts to exercise the office of a United States Commissioner under supposed authority of an appointment by the Supreme Court of the District of Columbia; that among other duties which he attempts to perform is the discharge of poor convicts under Sections 1042 and 5296 of the Revised Statutes of the United States; that, on October 4, 1897, Beckett made application to the respondent in conformity with said sections of the Revised Statutes, and the respondent was about to hear the said application and to act thereon as though he (Mills) was a United States Commissioner duly authorized, and as though Beckett came within the said sections of the Revised Statutes; and the petition thereupon avers that the

respondent has no lawful authority to act as such commissioner, he not having been appointed such by lawful authority; that he had no jurisdiction in the premises, as Beckett had been imprisoned by lawful authority for a specified time, and is not detained merely for the nonpayment of a. fine; that the sentence of Beckett was imposed by a court, whose fines, imprisonments and sentences do not come within the sections of the Revised Statutes aforesaid; and that the acts and the attempted acts of the respondent are null and void, and that he had no authority to order Beckett's production before him, or to permit him to file his application, or to proceed to a hearing upon the same.

The respondent Mills made return to the writ; and the return shows the facts stated in the petition to be true, leaving the questions of law raised by it to be determined by the court.

Upon the return, motion was made to quash the writ, and the motion prevailed. The court made an order to quash the writ, and to remand the papers to the commissioner (the respondent), who was directed to proceed in the matter according to law.

From this order the United States have appealed to this court.

*Mr. Henry E. Davis,* United States Attorney for the District of Columbia, and *Mr. D. W. Baker,* Assistant Attorney, for the United States.

*Mr. Arthur A. Birney* and *Mr. H. F. Woodard* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are five assignments of error made by the appellants; but the questions sought to be raised may be reduced to two: 1st. Whether the respondent Mills is entitled by virtue of his appointment by the Supreme Court of the District of Columbia to perform the duties of United States

Commissioner and to exercise the authority vested by the several statutes of the United States in such commissioners; and, 2d. Whether the Police Court of the District of Columbia is one of the courts of the United States whose sentences are intended to be included within the provisions of Sections 1042 and 5296 of the Revised Statutes of the United States relative to the discharge of poor convicts unable to pay the fines imposed upon them, after they have been in prison for thirty days for the nonpayment of such fines.

1. With reference to the first of these questions, we are compelled in the present case to leave it undetermined. The writ of *certiorari* can not be used to test the right of the respondent to hold the office of United States Commissioner, or the authority of the Supreme Court of the District of Columbia to make the appointment. The function of the writ in this District is to determine whether an inferior court or an officer exercising judicial or quasi-judicial functions, seeking to proceed with a cause, has jurisdiction so to do. *Hendley* v. *Clark*, 8 App. D. C. 165, 183, and cases there cited; also *Bradshaw* v. *Earnshaw*, just decided, *ante*, p. 495. Or, in other words, it is intended to check excess of jurisdiction. We do not desire to be understood as deciding that this is its only function. But certainly among its purposes is not to be included the inquiry whether the inferior court or officer, to whom the writ is addressed, has any legal existence as such court or officer. That legal existence seems necessarily to be implied by the requirement of the writ that the record and proceedings be transmitted to the superior court for examination as to their legality; for there could be no record and no formal legal proceedings unless there was a court or *de facto* officer in existence. While no sufficient reason has been adduced to us for questioning the power and authority of the Supreme Court of the District of Columbia, acting as a district court of the United States for this District, to appoint United

States Commissioners for all the purposes for which such commissioners are authorized by the laws of the United States, we deem it unnecessary definitely to determine that question, since determination of it would seem to be precluded by the form in which the proceedings have been instituted.

2. The most important question in the case, and that which is directly and explicitly presented for our consideration, is whether United States Commissioners in the District of Columbia are authorized and empowered by Sections 1042 and 5296 of the Revised Statutes of the United States to discharge convicts held under sentences of the Police Court of the District, after the expiration of thirty days of such sentences, if the convicts swear that they are poor and unable to pay the fine imposed upon them.

Sections 1042 and 5296 of the Revised Statutes of the United States are mere repetitions of each other with slight change of phraseology, the repetition no doubt being due to inadvertence on the part of the revisers. Both sections are taken from Section 14 of the Act of Congress of June 1, 1872 (17 Stat. 196), which act purports to be one "to further the administration of justice," and of which most of the sections have specific reference to the circuit and district courts of the United States. Section 1042 is in the following terms:

"When a poor convict, sentenced by any court of the United States to pay a fine, or fine and cost, whether with or without imprisonment, has been confined in prison thirty days, solely for the nonpayment of such fine, or fine and cost, he may make application in writing to any commissioner of the United States Court in the district where he is imprisoned, setting forth his inability to pay such fine, or fine and cost, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter; and if on examination it shall appear to him that

such convict is unable to pay such fine, or fine and cost, and that he has not any property exceeding twenty dollars in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him the following oath: 'I do solemnly swear that I have not any property, real or personal, to the amount of twenty dollars, except such as is exempt by law from being taken on civil precept for debt by the laws of the (State where the oath is administered); and that I have no property in any way conveyed or concealed, or in any way disposed of for my future use or benefit.' And thereupon such convict shall be discharged, the commissioner giving to the jailer or keeper of the jail a certificate setting forth the facts."

That there is no good reason to confine the application of this enactment to the courts of the United States in the several States, exclusive of those of the District of Columbia, seems very clear to us. Its provisions are not locally inapplicable to the District of Columbia, and so far as those provisions are the expression of a general policy, that policy undoubtedly is as applicable to the District of Columbia as anywhere else in the United States. Moreover, the very change of expression here is significant of the legislative purpose. In the previous sections of the act of June 1, 1872, from which the enactment in question, as we have stated, was taken, the special mention is of the "circuit and district courts of the United States;" while in the fourteenth section, that now under consideration, the express language used is "any court of the United States." Nor is there any good reason for the restriction of this expression to the so-called general system of the courts of the United States, assumed to be confined to the Federal courts in the several States of the Union. We must regard the Federal courts in the District of Columbia as being as much an integral part of the Federal judicial system as are the Federal courts in the States; for the jurisdiction of the Federal Government over the District of Columbia is as explicitly ordained by the

Constitution as is any other grant of power to the Federal Union; and is inalienable. The case of *McAllister* v. *United States*, 141 U. S. 174, which is cited to us in this connection, has reference merely to existing conditions in the Territories of the United States, which, from their peculiarly temporary and transitional character, antagonistic to all theory of permanency, must necessarily be dissevered from the permanent judicial organization for the States and the District of Columbia, and may well be assumed not to have been within the meaning or purpose of the framers of the Constitution, when they provided for the organization of our permanent judicial system.

But it does not necessarily follow from this that the expression—"any court of the United States"—used by Congress in Section 1042 of the Revised Statutes, was intended, or should be construed, to include such a tribunal as the Police Court of the District of Columbia. That court is undoubtedly in one sense a court of the United States, as is even the court of a justice of the peace in this District, or a court martial, or any other tribunal established by Congress for temporary or special circumstances; and it does not make the Police Court any less a court of the United States to call it a legislative court; for the legislative power can establish no court, either here or elsewhere, which is not authorized by the Constitution. But the fact that the Police Court is a court of the United States, created by the Congress of the United States under the authority of the Constitution of the United States, does not necessarily make applicable to it all laws enacted for the courts of the United States.

It is one of the settled rules for the construction of statutes, that general words in a statute may be restricted in order to give effect to the legislative purpose. See Potter's Dwarris on Statutes, p. 164; Sedgwick on Statutory and Constitutional Law, Ch. 6 ; *Reiche* v. *Smythe*, 13 Wall. 162, Now, it requires no elaboration of argument or citation of

authorities to show that when there is mention, either in the Constitution or in the statute law, of the courts of the United States, the courts thereby meant are those of general jurisdiction—not temporary, transitional, or sporadic courts; or courts of inferior and limited jurisdiction, specially organized to deal in a summary way with petty matters, either civil or criminal, outside of the usual course and scope of the common law. Of the latter character, undoubtedly, is the Police Court of the District of Columbia, although some common law jurisdiction has now been conferred upon it, and it has been authorized to proceed in divers cases in accordance with common law methods. Like the courts of the justices of the peace, which it was intended in criminal matters to supersede, its purpose was to take the place of the county courts or other courts of minor jurisdiction in England, which were never regarded as being within the general judicial system of that country, and the successors of which for the District of Columbia were certainly never contemplated by the framers of the Federal Constitution as coming within the scope of the provisions which they established for a Federal judicial system. The Police Court of the District of Columbia, therefore, although a court of the United States, is not a court of the United States in the sense of the Federal Constitution, and there is no reason for giving to the same expression in a statute a broader meaning than is given to it in the Constitution. In fact, when there is mention of the courts of the United States in any statute, we may conclusively assume that only the courts of general jurisdiction intended by the Constitution are meant, unless there is special reason to be deduced from the context of the statute for giving to the expression a different meaning.

Nor does it necessarily follow from this construction of the law that the anomaly will ensue which is suggested by counsel for the appellee, to the effect that there would be one rule applicable to poor convicts imprisoned under sentences of the Supreme Court of the District of Columbia, and another and

more severe rule to such convicts held for precisely similar offences under sentences of the Police Court of the District. Here another consideration intervenes.

Under what we may designate as the general criminal code of the United States, enacted for the Federal Union at large, it will be noticed that there is no statutory provision made for the enforcement of a fine, when that is the penalty imposed, or the only part of the penalty that remains to be performed; and the enforcement can only be by imprisonment of the convict until the fine is paid. This necessarily leaves the duration of the time of detention for this purpose indefinite; and no harm is done by such indefiniteness in the case of those who are able, but unwilling, to pay. In the case, however, of those who are unable to pay, the imprisonment would practically be perpetual, that is, for life, were it not for the provisions of Section 1042 of the Revised Statutes, which make it possible for poor convicts to relieve themselves from such imprisonment after the lapse of thirty days. See *In re Ruhl*, 5 Sawy. 186; *Kie* v. *United States*, 27 Fed. Rep. 356.

But under the special legislation of Congress for the District of Columbia, a different condition obtains. Here we have a special penal code, partly statutory and partly of common law origin, but applicable exclusively to the District of Columbia. Here the law is not silent as to the method of the enforcement of fines, when fines are imposed as penalties for criminal offences. On the contrary, there is a well defined system of commutation of fines, and specific provisions are found for the guidance of the courts in the event of default in the payment of fines. We need go no further back than the last act of Congress upon this subject, the act of July 23, 1892 (27 Stat. 262), wherein it was expressly provided that "in all cases where the said (police) court shall impose a fine, it may, in default of the payment of the fine imposed, commit the defendant for such time as the court thinks right and proper, not to exceed one year." Even if this be not inconsistent with the general code for

the Union, it is well settled law that, where there is a special or particular statute, and also a general statute, both applicable to the same subject-matter, the special or particular statute must prevail.  *Ex parte Crow Dog*, 109 U. S. 556; *State* v. *Stoll*, 17 Wall. 425; *Cass Co.* v. *Gillett*, 100 U. S. 585. And in no case can this rule be more appropriately applied than to the legislation of Congress for the District of Columbia as distinguished from its legislation for the Federal Union.

It is quite clear to us that the power vested in United States Commissioners by Section 1042 of the Revised Statutes, if attempted to be exercised in the District of Columbia, to release poor convicts at the expiration of thirty days imprisonment imposed in default of the payment of a fine, is entirely inconsistent with the power vested in the Police Court of the District to fix a term of imprisonment not to exceed one year, in such a contingency.  And when we consider the impropriety of the interference of such an officer as a United States Commissioner with the well-defined and specific sentence of a judicial tribunal, and the class of offenders and offences cognizable in the Police Court, we can not think that it was at all the intention of Congress in any manner to authorize such interference with the sentences of the Police Court of the District of Columbia.  No construction of Section 1042 of the Revised Statutes under any recognized canon of interpretation, will justify the application of that section to the Police Court; and no sufficient reason can be found, either in public policy or otherwise, that would authorize a construction of the statute such as would bring the Police Court within its purview.

We conclude, therefore, that the powers vested by Section 1042 of the Revised Statutes in United States Commissioners are to be exercised in the District of Columbia only with reference to those cases in which persons are held in prison for the nonpayment of a fine under sentences of the Supreme Court of the District of Columbia sitting as a circuit

or district court of the United States for this District and administering the general penal code of the United States; and that there is no warrant of law for the exercise of such powers with reference to the local penal law of the District of Columbia and the sentences of the Police Court.

It was proper in the present case by the writ of *certiorari* to prevent the exercise by the respondent of the powers which he attempted to exercise in the case before him; and the Supreme Court of the District of Columbia should have restrained him from proceeding in the case, and should not have quashed the writ. Our proper course, therefore, would be to reverse the order appealed from, and to remand the cause to the Supreme Court of the District of Columbia, with direction to proceed therein in accordance with law and in a manner not inconsistent with this opinion. But we can not ignore the fact apparent on the record of the case before us that the subject of the suit has failed since the taking of the appeal. The sentence of Beckett was for sixty days. That term expired on November 3, 1897. The action of the commissioner having been arrested by the service upon him of the writ of *certiorari* and subsequently by the appeal taken from the order of the court below quashing the writ, that action was ineffectual to interfere with Beckett's sentence; and we must presume that he has performed that sentence in full; and that it has now expired by its own limitation. There is nothing now for the respondent or appellee as commissioner to do or undo, and nothing upon which he can act. Nor can the writ of *certiorari* be made any longer to serve any good purpose, or any purpose whatever in this case, even if, in accordance with the opinion here expressed, we were to direct a reversal of the order therein made by the court below. But while, under the special circumstances of this case, the only formal order that we can now enter is one dismissing the appeal, in view of the fact that the subject-matter of the proceedings has passed out of existence, we are warranted by the fact, that

the questions here involved are of great public importance in the administration of justice in this District and would undoubtedly be of speedy and frequent recurrence, to determine those questions so far as we may in the present suit. For this course we have the authority of the Court of Appeals of the State of New York, when confronted by a somewhat similar situation. *People* v. *Martin,* 142 U. S. 228, 235. And the case of *Marbury* v. *Madison,* 1 Cranch, 137, is an authority substantially to the same effect. The questions involved were properly raised and could properly be determined during the pendency of the proceedings in the court below; and in a case of this kind it would seem to be unnecessary to postpone their determination until a case is reached in which a longer sentence would give more opportunity for a leisurely decision.

Our conclusion, therefore, is that while we regard the commissioner's action as unwarranted by the present condition of our law and that the order of the court below should have been a prohibition to him to proceed in the case, yet, in view of the expiration of Beckett's sentence pending the appeal of this court, we must now *dismiss the appeal. This will accordingly be done. And it is so ordered.*