(No. 26953.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR JOHNSTON, Plaintiff in Error.

*Opinion filed January 19, 1943—Rehearing denied March 11, 1943.*

A. BRADLEY EBEN, and GEORGE R. BIEBER, (JULIUS REZNIK, of counsel,) for plaintiff in error; FRANKLIN J. STRANSKY, for plaintiff in error on rehearing.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Arthur Johnston, was tried alone in the criminal court of Cook county before a jury on the charge of receiving stolen property. He was found guilty and sentenced to the penitentiary for an indeterminate term of one to ten years, with an advisory recommendation incorporated in the judgment that he serve a minimum of three years and a maximum of six years. He prosecutes a writ of error to this court.

On October 31, 1941, the plaintiff in error, along with Phillip Goldberg, Ralph Guralnick, Morris Poznansky and Evelyn Stuchel, was indicted by the grand jury of Cook county. The indictment contained three counts, one of armed robbery, one of simple robbery and the third for receiving stolen property. He was convicted under the third count, the first two counts having been dismissed on motion of the State's Attorney.

The evidence shows that Leonard Fisher was employed by the firm of Jack Glasser, Inc., and he testified that on October 16, 1941, he started out to make some deliveries for the company. After making three deliveries and one pickup, he was abducted in his automobile by Poznansky and Guralnick at the point of a gun and was driven to the Forest Preserve where he was forced to go into the woods and was there guarded by Poznansky while Guralnick transferred the goods from his automobile to theirs; that while the other car sped away he caught a glimpse of its license

number; that after the goods were transferred, he retrieved his car and drove to the police station, where he reported the matter. He further testified that he was robbed of twelve articles in all, consisting of five fur coats, a fur jacket, a fur scarf, four cloth coats and one muff.

Three of the other defendants, Poznansky, Guralnick and Goldberg testified for the State, and since the sentence of Johnston, they have each been released upon probation. They testified that on the night previous to the robbery, they met and planned committing the crime for the next day; that on the following morning they met and drove to the Glasser establishment and waited for Fisher. Fisher loaded the merchandise and was followed by the three defendants in Poznansky's automobile. The evidence further shows that Fisher made several deliveries and then finally Poznansky and Guralnick forced him into his own automobile at the point of a gun and drove him to the Forest Preserve where Poznansky took him into the woods while Guralnick was transferring the goods into Poznansky's car which was being driven by Goldberg. The robbers then drove to Johnston's store which is situated on Armitage avenue. When they arrived at the store, Johnston was not there, but one Evelyn Stuchel was there, and Poznansky offered to sell the furs to her, informing her that he had just obtained them by robbery. She made a telephone call to someone and told Poznansky to drive to the garage next door. Poznansky was the only one who had visited this store previously, having been there to purchase a suit of clothes about six months previous to this time. The testimony shows that the coats were then transferred to another car under the supervision of Evelyn Stuchel, and that after the same were transferred they went back to the store while they waited for Johnston. When Johnston arrived he stated that he was going to have the coats appraised and that he would be back. The defendants waited in his store for about an hour and a

half when Johnston returned and informed the robbers that he would give them $450 for the coats. Miss Stuchel gave Johnston a roll of money and he counted out $450 in $10 bills and gave them to the three men. The defendants then went back into the garage and went to Goldberg's house and divided the money between them, each receiving $150. When these men were apprehended, most of the money was found upon their persons still in the $10 denominations. Johnston's story, corroborated by Elmer Matson, his employee, was that he was engaged in the retail men's-clothing business and that on October 16, 1941, Poznansky and Goldberg appeared at his store and offered to sell him some furs which they said had been stolen, but that Johnston told them he wanted no part of them, and the men left. He denied that he purchased any property from the men and denied that he ever paid them any money. Evelyn Stuchel was not produced as a witness, but Johnston and Matson both testified that she was not present on the premises at the time when the men came in. Johnston also produced evidence showing that he purchased considerable goods from regular wholesale clothing merchants and that he was regularly engaged in the clothing business. However, his place of business was located in the rear of a candy and confectionary store operated by his parents. He had no sign on any window or on the building indicating in any way that he was in the clothing business.

Irving Glasser testified that he was secretary-treasurer of Jack Glasser, Inc., a corporation, and that on October 16, 1941, he personally turned over to Leonard Fisher, his delivery boy, a number of packages for delivery to customers, and that he was familiar with the contents of the shipment. Glasser testified in detail to the different items of merchandise given to Leonard Fisher for delivery and testified as to the value and ownership.

Plaintiff in error contends that on a trial for receiving stolen property, it is incumbent upon the People to prove

beyond a reasonable doubt that the property allegedly received is the identical property stolen by the thief and described in the indictment.

The stolen property had not been recovered and was not produced at the trial. However, there was definite proof of the articles delivered to Leonard Fisher for delivery. His testimony with respect to his stops for delivery and one pickup, together with the holdup and the transfer of the articles from his car to that of the robbers tallies with the evidence of the three defendants. Glasser's testimony showed that he had made many of the coats for customers and described in detail each article, the ownership and the value. It is true that the proof from the time of the robbery on to the sale and delivery to Johnston is dependent upon the testimony of the three defendant robbers. There is some discrepancy in the number of fur coats and other articles, between the testimony of Glasser, Fisher, and the robbers, but if the testimony is to be believed, there can be no doubt but that the major portion of the merchandise given to Fisher for delivery was finally sold and turned over to Johnston, and some of the articles named in the indictment are definitely identified in the proof as articles stolen from Fisher. In *Bishop* v. *People,* 194 Ill. 365, relied upon by plaintiff in error, the indictment charged the plaintiffs in error with stealing 200 pounds of copper wire belonging to Henry Keiser. The court reversed a judgment of conviction because there was an entire absence of testimony as to the description of the wire, and a failure to identify the wire delivered as that taken from the plant of Henry Keiser. In the present case the facts are sufficient to show the identity of some of the stolen articles beyond a reasonable doubt.

The plaintiff in error further maintains that the State has failed to prove the ownership of the property beyond a reasonable doubt. He complains because none of the five women who were named in the indictment as owners of

the coats were called as witnesses. The coats had not been recovered and were not present in court, and it is hard to see how the owners could give any testimony with reference to the coats delivered to Fisher by Glasser except such as would be based upon hearsay testimony. Glasser had made the coats for the owners and had them in his custody for delivery. He described each coat or article and placed them with Fisher for delivery. His knowledge of the property was intimate and based upon facts concerning the ownership. Such testimony cannot be said to be mere conclusions. In the cases cited by counsel the facts were quite different. In *Aldrich* v. *People,* 225 Ill. 610, the indictment charged the defendant with receiving certain stolen property, the same being owned by a corporation. The proof showed that the property in question was owned by an individual, and upon appeal this court reversed the judgment and remanded the cause, holding that ownership is a material allegation and must be proved exactly as alleged. In *People* v. *DePaepe,* 281 Ill. 318, the indictment alleged the property, some 48 pairs of shoes, in John W. Hayworth. The property was stolen from a railroad car and the thief who stole the goods testified that he broke into the car and stole the shoes, describing them in detail, which he delivered to the defendant, charged with receiving stolen property. Hayworth testified that he was in the shoe business and had ordered shoes answering the description of the shoes stolen and had never received the same. Clearly there was no proof in that case of the ownership of the shoes stolen. In *People* v. *Smith,* 341 Ill. 649, the indictment charged that the property belonged to Chester Olenec, and although Nellie Olenec testified as to property being stolen from her home, there was nothing in the record to show that her husband's name was Chester Olenec or that the things stolen were the property of Chester Olenec. The chain of proof in this case does not leave any such omissions or necessary elements lacking in the proof of ownership.

It is further urged by plaintiff in error that the court will reverse a conviction based on uncorroborated testimony of accomplices who admit that they expect leniency for their testimony and who are otherwise shown to be unworthy of belief. It is true that this court has held that where the testimony of an accomplice lacks material corroboration, or where it is discredited, or where it appears to be actuated by a desire to avoid punishment, it is not sufficient upon which to sustain a verdict and judgment of conviction. (*People* v. *Cohen,* 376 Ill. 382; *People* v. *Reznik,* 361 id. 145.) In *People* v. *Cohen, supra,* it appeared that there were enough discrepancies in the stories told by the accomplices so that their deliberate lying was evident. In the case at bar there were practically no discrepancies between the stories of the three robbers as to how the robbery occurred and as to the delivery of the property to Johnston. Their testimony concerning the robbery was corroborated exactly by the witness Leonard Fisher. At the time of their arrest, a short time after the robbery, they were each found with a large number of $10 bills in their possession. These facts tend to corroborate the testimony of the three defendants. While Johnston proved that he had purchased a considerable amount of clothing from wholesale concerns and was more or less engaged in the clothing business, it is of interest to know that his place of business was located in the rear of a confectionary store run by his parents and that he had no signs on the windows or on the building indicating in any way that he was in the clothing business. The jurors had the opportunity of viewing the witnesses and hearing them testify, and it was their duty to determine the credibility of such witnesses and the weight of the testimony. "A conviction may be sustained on the uncorroborated testimony of an accomplice, but such testimony is of doubtful integrity and is to be considered with great caution." (*People* v. *Wagman,* 311 Ill. 330.) In this same case the court further said, "and although they were granted lighter punishment if

they would testify, that fact, alone, does not necessarily require that their testimony should not be considered." Having in mind that the testimony of the three defendants must be regarded with suspicion and acted upon with great caution, this court cannot say that the proof was so unsatisfactory as to raise a reasonable doubt of the guilt of the plaintiff in error.

It is further urged that the evidence as to the value of the property was not sufficient. In *People* v. *Fognini*, 374 Ill. 161, this court stated, "In those types of larceny where the value of the property is material, that value must be alleged and proved, and the proof must show the fair, cash market value at the time and place of the theft." In the case here the witness Glasser was asked the value of each coat and no objection was interposed at any time to the form of such question. Therefore, the plaintiff in error cannot now question the admissibility of that proof.

We are satisfied that the plaintiff in error had a fair trial and that there is sufficient evidence to sustain the verdict of the jury finding him guilty beyond all reasonable doubt.

In the case of *People* v. *Montana*, 380 Ill. 596, we held that the amendments sought to be made to sections 2, 3, 7 and 7a, and section 3a added, of the Parole Act, in 1941, were unconstitutional and void, and in accord with what was stated in that case, the sentence here fixing a minimum term of three years and a maximum term of six years was improper. However, plaintiff in error having been legally convicted, the judgment will be reversed and the cause remanded to the criminal court of Cook county, with directions to enter a proper sentence.

*Reversed and remanded, with directions.*